# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
January 24, 2012 Session

## DANNY MILLER v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Knox County**
**No. 92712      Mary Beth Leibowitz, Judge**

---

**No. E2011-00498-CCA-R3-PC - Filed May 31, 2012**

---

The Petitioner, Danny Miller, appeals the Knox County Criminal Court's denial of his petition for post-conviction relief from his 1979 conviction of criminal sexual conduct in the first degree and resulting life sentence. On appeal, he argues that the post-conviction court erred by denying his petition to test DNA evidence pursuant to the Post-Conviction DNA Analysis Act of 2001. Based upon the oral arguments, the record, and the parties' briefs, we affirm the post-conviction court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed**.

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, and JEFFREY S. BIVINS, JJ., joined.

Lindsay N. Graham, Alisa N. Livaditis, and Gianna Maio (on appeal) and Wells Trompeter and Jessica Van Dyke (at trial), Knoxville, Tennessee for the appellant, Danny Miller.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Leslie Nassios, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

This case relates to the rape of a twenty-one-year-old woman on August 1, 1978. The victim reported that about 3:00 p.m., a man entered her apartment, threatened to harm her, and raped her vaginally, anally, and orally. The attack lasted about one hour. The victim

sought medical treatment, and a doctor collected evidence for a rape kit. The doctor gave the victim's rape kit to Detective Ted Lambert of the Knoxville Police Department (KPD). Six months later, the victim identified the Petitioner from a photograph array. In 1979, a Knox County Criminal Court Jury convicted the Petitioner of criminal sexual conduct in the first degree, and the trial court sentenced him to life.

On September 22, 2009, the Petitioner filed a petition requesting DNA analysis of the evidence pursuant to Tennessee Code Annotated section 40-30-303. The post-conviction court appointed counsel to represent the Petitioner. On December 7, 2009, Officer Bobby Soloman, the Property Room Manager for the KPD, submitted an affidavit, stating that he searched for the victim's rape kit, that he did not find the evidence, and that "[i]t is unlikely that evidence from 1978 and 1979 would be maintained." Leslie Nassios, an assistant district attorney general for Knox County, also submitted an affidavit, stating that KPD Investigator William S. Still arranged for Officer Soloman to search for evidence from the Petitioner's case and that it was her "understanding" the police department no longer possessed the evidence.

On November 19, 2010, the trial court conducted an evidentiary hearing. At the hearing, Officer Soloman testified that he joined the KPD in 1986. He became the manager of the department's property room in 2002. Pursuant to Assistant District Attorney General Nassios' request, Officer Soloman searched for the victim's rape kit on November 5 and 6, 2009. He searched for the evidence in a warehouse on State Street. He explained that the police department stored old evidence in a room on the second floor of the warehouse and that half of the room contained paperwork while the other half contained boxes of evidence on shelves. Officer Soloman said that he could only testify about how evidence had been stored since 2002, when he became the property room manager. Since that time, a case number and a year were written on a box of evidence, and a box could contain evidence from multiple cases. Officer Soloman said that he had "no clue" as to how evidence from a 1978 case would have been stored but that the evidence would have been logged in a log book. He explained, "There was no case number. They put the arresting officer or the officer that brought the item in, what the item was, and if there was a suspect or a victim or an owner." Officer Soloman said that the police department still had the log books for 1978 and 1979 and that he found nothing in the books regarding evidence from the Petitioner's case.

Officer Soloman testified that prior to the summer of 2010, boxes of evidence were stored on sixty shelves in the warehouse. The boxes were not arranged in any particular order. In August 2010, the warehouse was remodeled, and every evidence box was inventoried. Officer Soloman said that no evidence pertaining to the Petitioner's case was found. However, he also stated,

I have looked at every box, not inside the boxes because the case number that they did years and years ago we don't have those numbers. So I don't know if there--there could be thirty boxes inside one box. There's no year. It's just a case number. We don't have any paperwork with it.

He stated that the oldest evidence in the boxes was from 1989 or 1990. Regarding evidence prior to 1989, Officer Soloman said he had "no clue" what happened to any evidence collected before he joined the police department in 1986. Since 2002, the department's policy was not to destroy evidence from rape kits. However, he did not know the department's policy for destroying evidence prior to 2002.

On cross-examination, Officer Soloman testified that if a defendant did not appeal his or her conviction, the evidence from the case was destroyed. On redirect examination, he testified,

What we did from the early evidence that we had from the 1990s was matched with all the paperwork that we have. Anything prior to the 1990s there's no year on it so we don't know what it is and there's nothing to log. I mean there's nothing to describe it other than it's a box with a case number.

In a written order, the post-conviction court noted that Officer Soloman, "who has sworn to testify truthfully, and whom this court has no reason to disbelieve," testified that he looked for the evidence for two days, that he found no evidence related to the Petitioner's case, and that he thought further searching would be "futile in light of the lack of labeling from years ago." The court also noted that the officer checked the log books and found nothing related to the Petitioner's case. The court concluded that "there is nothing to test" and denied the petition to test evidence.

## II. Analysis

The Petitioner claims that the trial court erred by denying his petition because "Mr. Soloman's testimony leads to the conclusion that the rape kit may very well be in existence at the off-site Knoxville Police Department State Street warehouse." In support of his argument, the Petitioner notes that Officer Soloman testified that he did not look inside every box when the warehouse was remodeled in 2010, that one box could contain additional boxes of evidence, and that evidence from rape kits was not destroyed. The Petitioner contends that defense counsel should be allowed to conduct a supervised search for the "archived evidence." The State argues that this court should affirm the post-conviction court's denial

of the petition because the lower court accredited Officer Solomon's testimony that he searched for the evidence but did not find anything related to the Petitioner's case. We agree with the State.

The Post-Conviction DNA Analysis Act of 2001 provides that

> a person convicted of and sentenced for the commission of first degree murder, second degree murder, aggravated rape, rape, aggravated sexual battery or rape of a child, the attempted commission of any of these offenses, any lesser included offense of these offenses, or, at the direction of the trial judge, any other offense, may at any time, file a petition requesting the forensic DNA analysis of any evidence that is in the possession or control of the prosecution, law enforcement, laboratory, or court, and that is related to the investigation or prosecution that resulted in the judgment of conviction and that may contain biological evidence.

Tenn. Code Ann. § 40-30-303. A post-conviction court is obligated to order DNA analysis when the petitioner has met each of the following four conditions:

> (1) A reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis;
>
> (2) The evidence is still in existence and in such a condition that DNA analysis may be conducted;
>
> (3) The evidence was never previously subjected to DNA analysis or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and
>
> (4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

Tenn. Code Ann. § 40-30-304.

The State argued at the evidentiary hearing and maintains on appeal that this case is similar to Thomas R. Warren, Jr. v. State, No. M2002-02907-CCA-R3-CO, 2004 Tenn. Crim. App. LEXIS 802 (Nashville, Sept. 21, 2004). In Warren, the petitioner filed a petition to test evidence pursuant to Tennessee Code Annotated section 40-30-303. Id. at *2. The State claimed that the evidence was unavailable and submitted affidavits from the police chief, the district attorney general, and the criminal court clerk, stating that they searched their offices and were unable to find any physical evidence related to the petitioner's case. Id. at *3. The trial court dismissed the petition without an evidentiary hearing, concluding that the evidence no longer existed. Id. On appeal, a panel of this court concluded that the affidavits supported the post-conviction court's determination that the evidence did not still exist. Id. at *7.

Turning to the instant case, we note that the Petitioner did not include the trial transcript in the record on appeal. Nevertheless, we will take judicial notice of the record in the appeal of the Petitioner's conviction. See State ex rel. Wilkerson v. Bomar, 376 S.W.2d 451, 453 (1964). Our review of the direct appeal record confirms that the victim's doctor found sperm and collected evidence for a rape kit. Although the victim's medical records show that the doctor gave the kit to Detective Lambert, Detective Lambert did not testify at trial, and the victim's rape kit was not introduced into evidence. Officer Soloman testified at the post-conviction evidentiary hearing that he searched the police department's warehouse for two days and checked the log books but that he did not find any evidence related to the Petitioner's case. He also stated that he found no evidence related to any case prior to 1989 and that it would have been unlikely for the department to have maintained evidence from 1978 or 1979. Therefore, we conclude that the record supports the post-conviction court's determination that the evidence no longer exists.

### III. Conclusion

Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE